UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MARK TERRY JOHNSON,<br><br>    Petitioner,<br><br>v.<br><br>ANDREW SAUL,[1]<br>Commissioner of Social Security Administration,<br><br>    Respondent. | Case No. 2:19-cv-00045-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Currently pending before the Court is Mark Johnson's Petition for Review of the Respondent's denial of social security benefits, filed on February 5, 2019. (Dkt. 1.) The Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and the administrative record (AR), and for the reasons that follow, will affirm the decision of the Commissioner.

---

[1] Andrew Saul was sworn in as Commissioner of Social Security on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul will be substituted for Acting Commissioner Nancy A. Berryhill as the Respondent in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**MEMORANDUM DECISION AND ORDER - 1**

## PROCEDURAL AND FACTUAL HISTORY

On February 28, 2017, Petitioner protectively filed an application for Title II benefits for a period of disability beginning July 14, 2015, based upon physical impairments related to herniated discs and degenerative disc disease. This application was denied initially and on reconsideration, and a hearing was held on October 4, 2018, before Administrative Law Judge (ALJ) Marie Palachuk. After considering testimony from Petitioner and a vocational expert, ALJ Palachuk issued a decision on October 18, 2018, finding Petitioner not disabled.

Petitioner timely requested review by the Appeals Council, which denied his request for review on December 14, 2018. Petitioner timely appealed this final decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

On the date of the administrative hearing, Petitioner was 45 years of age. Petitioner completed the eleventh grade, and his prior work experience includes work as a line cook, bartender, and carpenter.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantial gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since his alleged onset date of July 14, 2015. At step two, it must be determined whether the claimant suffers

**MEMORANDUM DECISION AND ORDER - 2**

from a severe impairment. The ALJ found Petitioner's lumbago and degenerative disc disease of the lumbar spine, with history of possible L4-L5 disc herniation, severe within the meaning of the Regulations.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ considered Listing 1.04 (disorders of the spine). The ALJ found that Petitioner's impairments did not meet or equal the criteria for Listing 1.04, because the medical source opinions did not support such a finding, and claimant did not otherwise meet the requirements of Listing 1.04. Specifically, the ALJ found that imaging reports did not show nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis. Accordingly, the ALJ determined that Petitioner's spine impairments did not satisfy the criteria of Listing 1.04. (AR 18.) If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity (RFC) and determine, at step four, whether the claimant has demonstrated an inability to perform past relevant work.

The ALJ found Petitioner was able to perform his past relevant work as a bartender. Therefore, the ALJ did not proceed to step five, and issued a finding of not disabled.

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to

**MEMORANDUM DECISION AND ORDER - 3**

last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he not only cannot do his previous work but is unable, considering his age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports Petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by

**MEMORANDUM DECISION AND ORDER - 4**

substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

## DISCUSSION

Petitioner raises a single issue, contending the ALJ erred at step three on the grounds that Petitioner's back condition meets or equals the criteria of Listing 1.04A, disorders of the spine. Upon review of the record, the Court finds the ALJ's determination at step three is supported by substantial evidence in the record, and therefore free of legal error, for the reasons explained below.

1.  **Petitioner Has Not Shown He Meets the Requirements of Listing 1.04A.**

Petitioner claims the ALJ erred in finding he does not meet the requirements of Listing 1.04A. Under SSA regulations, "[t]he Listing of Impairments ... describes for each of the major body systems impairments that we consider to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). For a claimant's impairment to meet the requirements of a listed impairment, all the criteria of that exact listing and the duration requirement of the listing must be satisfied. 20 C.F.R. §§ 404.1525(c)(1-3), 416.925(c)(1-3).

**MEMORANDUM DECISION AND ORDER - 5**

Listing 1.04 addresses disorders of the spine resulting in compromise of a nerve root or the spinal cord. 20 C.F.R. Part 404, Subpart P, Appendix 1, 1.04. To satisfy the requirements of Listing 1.04A, Petitioner must show "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)."

The ALJ found that Petitioner's back disorder did not meet listing 1.04A because, although Petitioner's lumber MRI from August of 2015 showed disc bulging at L5-S1 and a disk protrusion and extrusion at L4-5, there was "no evidence of nerve root compression." (AR 18, 380.) A follow up MRI in February of 2016 showed the extrusion had resolved, but that Petitioner still had a posterior disc protrusion at L4-5 and L5-S1. (AR 18, 468.) The ALJ determined also that none of Petitioner's imaging reports showed "nerve root compression, spinal arachnoiditis, or lumbar stenosis." (AR 18.) And finally, the ALJ noted that none of the medical sources whose opinions are part of the record

**MEMORANDUM DECISION AND ORDER - 6**

opined that Petitioner's impairments meet Listing 1.04A. (AR 18.)[2]

Petitioner references record evidence documenting medical findings regarding his back conditions. Pet. Brief at 6 – 8. However, the evidence relied upon does not indicate Petitioner suffers from motor loss or nerve root compression, or exhibits other symptoms sufficient to meet the requirements of Listing 1.04A. For instance, Petitioner cites the consultative report of Dr. Benjamin Kartchner, who conducted an examination in June of 2017, as well as Petitioner's medical imaging findings, as support for his argument that Petitioner's impairments meet the requirements of Listing 1.04A. But, neither Dr. Kartchner's report nor Petitioner's medical imaging reports document Petitioner meets all the requisite criteria. Further, other substantial evidence in the record supports the ALJ's findings to the contrary.

Dr. Kartchner performed a consultative examination on June 23, 2017. (AR 587.) Dr. Kartchner observed Petitioner walked with a slow, deliberate gait, which was slightly wide based. However, he noted Petitioner was able to sit without assistance and rise to a standing position without assistance. Dr. Kartchner remarked that Petitioner "is quite thin

---

[2] Although not part of the ALJ's discussion at step two, the ALJ recited the record evidence documenting Petitioner's treatment history in his analysis at step four. (AR 20 - 21.) Dr. Dirks, one of Petitioner's treating physicians, advised Petitioner in August of 2015 to continue with physical therapy. (AR 19.) Dr. Ludwig, another of Petitioner's treating physicians who assumed Petitioner's care in February of 2016, was of the opinion Petitioner could return to light duty work. (AR 20.) Dr. Peaker performed a functional capacity evaluation in July of 2016, and determined Petitioner demonstrated the capacity for full-time work within the light to medium range, assessing a 7% whole-person impairment. (AR 20.) And finally, the ALJ discussed Dr. Kartchner's findings from June of 2017, who also was of the opinion Petitioner could return to work. (AR 21.)

**MEMORANDUM DECISION AND ORDER - 7**

and so it is difficult to tell whether there is any atrophy in the lower extremities. They are quite thin." However, his examination findings documented symmetric muscle tone and motor strength in Petitioner's lower extremities. (AR 590.) Dr. Kartchner also performed straight leg testing in the seated and supine position, and in his opinion, he "objectively [would] say this test was negative." (AR 591.) Dr. Kartchner reviewed Petitioner's EMG testing from August of 2015, which was negative. (AR 592.) He reviewed also Petitioner's imaging, which he noted did not reveal any radicular spondyloarthropathy or radiculopathy. (AR 592.) Reflex testing was negative for abnormalities. (AR 590.)

Given the objective findings and his examination findings, Dr. Kartchner was unable to explain Petitioner's complaints of "saddle anesthesia,"[3] which he stated was concerning but that he "would have expected neurosurgery to act on this if it was true." In Dr. Kartchner's opinion, Petitioner's radicular signs were most likely "secondary to chronic inflammatory changes," and his pain symptoms were "secondary to muscle spasms and rigidity." (AR 592.)

Dr. Kartchner's findings indicate that Petitioner did not exhibit nerve root compression or radiculopathy, did not have a positive straight leg test, and did not have muscle atrophy with associated muscle weakness accompanied by sensory or reflex loss. At best, Dr. Kartchner's opinion regarding lower extremity atrophy was inconclusive,

---

[3] Dr. Kartchner refers to Petitioner's complaints of numbness in the area of his buttocks, perineum, and legs when he sits for a prolonged time . (AR 588); *see also* "saddle block anesthesia," STEDMANS MEDICAL DICTIONARY 37930, defined as a "form of spinal anesthesia limited in area to the buttocks, perineum, and inner surfaces of the thighs."

**MEMORANDUM DECISION AND ORDER - 8**

given his findings of normal reflexes and normal muscle strength testing accompanied by Petitioner's ability to sit and rise from sitting without assistance.

Turning to the objective medical tests and reports upon which Petitioner relied (and which Dr. Kartchner reviewed), none of the test results indicated nerve root compression or associated atrophy with associated muscle weakness accompanied by sensory or reflex loss. Petitioner's August 5, 2015, MRI report indicated disc protrusion and disk bulging, but "no severe narrowing of the left exit foramina," and no indication of nerve root compression. (AR 380 – 381.) An EMG study of the left lower extremity performed on August 10, 2015, was normal, and the study did not confirm the presence of L4 radiculopathy. (AR 437.) Dr. Ludwig, who on February 1, 2016, reviewed the August 2015 MRI results, assessed low back pain and "spondylosis without myelopathy or radiculopathy." (AR 467.) Dr. Ludwig ordered an MRI to compare with the earlier studies.[4]

During a follow-up appointment on February 8, 2016, Dr. Ludwig reviewed the new MRI results, which showed "L4/5 HNP with right recess stenosis, now resolving with absorption of the disc fragment," and continued low back and lower extremity pain, left greater than right. (AR 468.) In Dr. Ludwig's opinion, Petitioner was cleared in February of 2016 for light duty work with a ten-pound lifting limitation. (AR 469, 471.) On March 31, 2016, Petitioner reported to Dr. Ludwig that he was not experiencing

---

[4] The MRI report is not in the record. However, it is apparent from Dr. Ludwig's records that the MRI was performed between February 1, 2016, and February 8, 2016.

**MEMORANDUM DECISION AND ORDER - 9**

weakness or numbness, and he was reducing his pain medication usage. (AR 472.)

In summary, the evidence relied upon by Petitioner does not show Petitioner met each of the criteria for Listing 1.04A. Accordingly, the Court finds the ALJ did not err in concluding Petitioner did not meet Listing 1.04A.

2.  **Petitioner Has Not Shown He Medically Equals the Requirements of Listing 1.04A.**

Alternatively, Petitioner argues that if he did not meet the requirements of Listing 1.04A, he medically equaled them. Pet. Brief at 9. Petitioner relies again upon Dr. Kartchner's consultative examination findings, arguing that Petitioner medically equals the listing given his significant muscle spasms, rigidity of the back, and saddle anesthesia.

A claimant's "impairment(s) is medically equivalent to a listed impairment in appendix 1 if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a). Where a claimant has a listed impairment but does not exhibit all the required findings for that impairment, medical equivalence can exist if the claimant has other findings related to his impairment that are at least of equal medical significance to the required criteria. 20 C.F.R. § 404.1526(b)(1). The ALJ must consider medical equivalence based on all evidence in the claimant's case record about his impairments and their effects that are relevant to this finding. 20 C.F.R. § 404.1529(d)(3). This process involves comparing the claimant's symptoms, signs, and laboratory findings with the symptoms, signs, and laboratory findings of a listed

**MEMORANDUM DECISION AND ORDER - 10**

impairment. *Id*. Thus, to merit a finding of medical equivalence, Petitioner must offer evidence showing his own symptoms, signs, and laboratory findings are at least as medically significant as those that would show he met the listing requirements.

Petitioner references the medical evidence of record documenting his back impairment. Pet. Brief at 9. But he does not cite evidence showing that his impairment is as significant as an impairment that meets all the requirements of Listing 1.04A. Nor does he articulate any reasoning that would support such a finding based on the evidence that he does cite. In particular, he offers no argument or evidence indicating how his impairment, characterized as muscle spasms, rigidity, and saddle anesthesia, is as significant as the listed impairment given the lack of any diagnosed nerve root compression, the negative straight leg raise test, and the lack of motor loss characterized by atrophy with associated muscle weakness accompanied by sensory or reflex loss.[5] Accordingly, Petitioner has not shown the ALJ erred in finding that he did not medically equal Listing 1.04A.

## CONCLUSION

Substantial evidence supports the ALJ's findings at step three. The Court will therefore deny Petitioner's request for review and affirm the decision of the Commissioner.

---

[5] Respondent sets forth additional reasons undercutting Petitioner's claim of medical equivalence, such as the opinions of the state agency physicians Drs. Song and Coolidge, who both maintained Petitioner retained the ability to work in some capacity; Petitioner's treating physician, Dr. Ludwig, who similarly opinioned Petitioner could return to work; and Petitioner's actual return to employment in 2018. Resp. Brief at 12-13.

**MEMORANDUM DECISION AND ORDER - 11**

## **ORDER**

**NOW THEREFORE IT IS HEREBY ORDERED:** Petitioner's Petition for Review (Dkt. 1) is **DENIED**, the decision of the Commissioner is **AFFIRMED**, and this action is **DISMISSED** in its entirety, with prejudice.

DATED: April 22, 2020

_____
Honorable Candy W. Dale
United States Magistrate Judge